UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

Kenneth ROSS,

                              Petitioner,

                v.

SUPERINTENDENT,

                              Respondent.

**MEMORANDUM & ORDER**
10-CV-00147 (PKC)

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Kenneth Ross ("Petitioner") brings this pro se Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, attacking his 2005 state conviction for Murder in the First Degree. He claims that: (1) his plea of guilty in trial court was not knowing and voluntary; (2) the trial court should have ordered a competency examination; and (3) he received ineffective assistance from his trial counsel. Petitioner also moves for appointment of counsel in support of his petition. For the reasons set forth below, both the *habeas* petition and the motion to appoint counsel are DENIED.

      **BACKGROUND**

*I.    Relevant Factual History*

*A.  The Arrest and Indictment*

On July 10, 2003, at approximately 7:00 p.m., in Apartment A3 of 1571 Sterling Place, Brooklyn, Petitioner stabbed and killed his brother, Frankie Ross, an amputee confined to a

wheelchair, during an argument[1] (Affidavit in Opposition to Petition for a Writ of Habeas Corpus, Docket Entry 3 ("Resp't Br."), Ex. E at 2). When Ronald Scott, a friend of Ross, attempted to intervene, Petitioner stabbed Scott. *Id.* Petitioner was immediately apprehended outside of the apartment building where the stabbings took place. *Id.* Scott died from the injuries two months later. Petitioner was indicted on one count of Murder in the First Degree (N.Y. Penal Law § 125.27 [1][a][viii]), four counts of Murder in the Second Degree (N.Y. Penal Law 125.25[1]), two counts of Assault in the First Degree (N.Y. Penal Law §§ 120.5[1] and [2]), and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law 265.01[2]). *Id.*

### B. The Plea Proceeding

On November 9, 2005, Petitioner, represented by counsel, pled guilty to Murder in the First Degree, pursuant to an agreement with the prosecution that provided for Petitioner to receive the minimum sentence for murder in the first degree, twenty years to life (P. 9).[2] At the plea proceeding, Petitioner conceded that he intentionally stabbed his brother, Frankie Ross, and his friend, Ronald Scott, with the intention of killing them (P. 10-12). When asked why he had committed these acts, Petitioner told the court that he was "upset" (P. 12-13). Petitioner could not recall why he was upset with his victims because he was "using drugs at the time of the incident," but acknowledged that he wanted to kill the two men. *Id.*

Petitioner also acknowledged at the plea proceeding that he desired to plead guilty, that he had conferred with his attorney and was satisfied with his attorney's representation, and that

---

[1] Because Petitioner was convicted, the Court recites relevant facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).
[2] Numbers preceded by 'P." refer to the pages of the plea minutes of Petitioner's November 9, 2005 plea proceedings, which are included in Docket Entries 1 and 3. Those preceded by "S." refer to the November 30, 2005 sentencing minutes, mistakenly dated November 13, 2005, which are included in Docket Entries 1 and 3.

2

he understood the nature of the charges and the purpose of the proceedings (P. 15, 17-18). In response to the court's attempt to determine Petitioner's mental status, Petitioner replied that he was taking psychoactive medication as prescribed by his physician, but that he had not taken any unprescribed medication or consumed alcohol in the preceding twenty-four hours (P. 14-15). He confirmed that he was feeling physically and mentally healthy and understood the proceedings (P. 14-15, 21).

Petitioner also acknowledged that his plea was the product of his own free will and that he had not been threatened or compelled to plead guilty (P. 17-18). The court inquired whether Petitioner understood that he could be prosecuted for perjury if he violated his oath to tell the truth during his allocution (P. 19). Initially, Petitioner stated that he did not; after conferring with counsel, however, Petitioner stated that he understood, and then declined the opportunity to change or "take back" any of his prior statements (P. 20).

Petitioner was fully advised of the nature of the charges against him and of the rights he was waiving by entering a guilty plea, including his right to appeal (P. 15-22). Petitioner signed a Waiver of Right to Appeal after discussing it with his attorney (P. 21-22). In response to questions from the court, Petitioner's counsel noted that it was his professional opinion that Petitioner knowingly and voluntarily waived his right to appeal (P. 23). Petitioner again confirmed that he understood the charges against him and that he desired to plead guilty to Murder in the First Degree (P. 23).

### C. *The Sentencing*

On November 30, 2005, Petitioner appeared for sentencing, accompanied by the same attorney who had represented him at the plea proceeding (S. 2). Petitioner's attorney stated that

Petitioner "wanted his plea back" because he felt the sentence was "too severe" (S. 3). The court, responded that, "[a] change of heart as to whether the agreed upon sentence is acceptable is not sufficient ground to grant a motion to withdraw a plea of guilty" (S. 3).

Later, defense counsel noted that Petitioner was "a little impaired" as a result of brain injuries he had sustained earlier in his life and a long history of psychiatric problems, and requested that the court recommend Petitioner undergo psychiatric treatment while incarcerated (S. 7). The court granted the request and, as promised, sentenced the Petitioner to twenty years' to life (S. 8).

### D. Direct Appeal

Petitioner appealed his conviction to the New York Supreme Court, Second Department, on the ground that his plea of guilty was not knowing and voluntary. *People v. Ross*, 52 A.D.3d 624, 861 N.Y.S.2d 69 (2008). In support of his claim, Petitioner argued that the trial court had not sufficiently explored whether Petitioner understood that by pleading guilty he was waving the potential affirmative defenses of extreme emotional disturbance and intoxication (App't Br. 7-8).[3]

The Appellate Division affirmed Petitioner's conviction, holding that: (1) Petitioner's claim was unpreserved for appellate review because Petitioner had not previously moved to withdraw his plea; and (2) in any event, the record established that the plea was knowing and voluntary, and that the trial court therefore was not required to inquire further into the affirmative defenses. *Id.* at 624, 69-70.

On August 22, 2008, Petitioner's application for leave to appeal to the New York Court of Appeals was denied. *People v. Ross*, 11 N.Y.3d 741, 864 N.Y.S.2d 339 (2008).

---

[3] Petitioner's State court appellate brief is included in Docket Entries 1 and 3.

### E. *State Collateral Attack - § 440 Motion to Vacate*

Petitioner filed a *pro se* motion in New York Supreme Court (Kings County) to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 on the grounds that: (1) the court erred in failing to order a competency examination for Petitioner; and (2) Petitioner's trial counsel was ineffective because counsel failed to: (a) challenge the determination that Petitioner was competent to stand trial; and (b) obtain an independent psychiatric examination of Petitioner concerning his condition at the time of the murder (Resp't Br., Ex. D). On June 4, 2009, the court denied Petitioner's motion, finding that Petitioner was using the motion as a further means to appeal and that his claims were unsubstantiated by the record (Resp't Br., Ex. F).

### F. *Petition for Writ of Habeas Corpus*

On January 4, 2010, Petitioner submitted the instant Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner re-asserts the claims from his 440.10 petition, namely, that: (1) his plea of guilty in the trial court was not knowing and voluntary; (2) the trial court should have ordered a competency examination; and (3) he received ineffective assistance from his trial counsel because counsel failed to: (a) challenge the determination that Petitioner was competent to stand trial; and (b) obtain an independent psychiatric examination of Petitioner concerning his condition at the time of the murder. *Id.* Petitioner relies on the arguments he made previously on direct appeal and in his motion to vacate pursuant to N.Y.C.P.L.R. § 440.10. *Id.*

**DISCUSSION**

I. *Petition for Writ of Habeas Corpus*

Under 28 U.S.C. § 2254, a federal district court is empowered to "entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." In order to obtain relief, an individual in custody must demonstrate, *inter alia*, that he has: (1) exhausted all of his potential state remedies; (2) asserted his claims in his state appeals such that they are not procedurally barred from federal *habeas* review; and (3) satisfied the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if his appeals were decided on the merits. *Philbert v. Brown*, 1:11-CV-1805 (NGG), 2012 WL 4849011, at*5 (E.D.N.Y. Oct. 11, 2012).

Here, there is no debate that Petitioner has exhausted his claims. Respondent, however, contends that the petition should be denied because Petitioner's claims are procedurally barred, without merit, or both (Resp't Br.).

A. *Review of a Procedurally Defaulted Claim*

"It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell,* 556 U.S. 449, 465 (2009) (internal quotation marks and citations omitted). Where the state court has actually and explicitly relied upon procedural default to dispose of a claim, there is an "adequate and independent state ground" for the judgment, and federal *habeas* review is prohibited. *Harris v. Reed,* 489 U.S. 255, 260 (1989); *see also Galarza v. Keane,* 252 F.3d 630,

637 (2d Cir. 2001) (state court's reliance must be "unambiguous and clear from the face of the opinion"); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991) (reasoning that states have an interest "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct its own errors").

To overcome the bar to federal *habeas* review of a claim that has been procedurally defaulted in state court, "the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748-50). The court may find cause where "some objective factor external to the defense" prevented the petitioner from presenting the claim. *Coleman*, 501 U.S. at 753. Once cause is established, the petitioner must also demonstrate "prejudice" by showing that "there is a reasonable probability that the result of the trial would have been different" had the alleged constitutional violation not occurred. *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (citation and internal quotation marks omitted). If the petitioner is unable to show cause and prejudice, his procedural default may only be excused if he can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, *i.e.,* "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo,* 513 U.S. 298, 321 (1995)).

B. *Review of State Court Merits Adjudications*

Where a state court reaches the merits of a claim asserted in a § 2254 *habeas* petition, the state court's decision is entitled to a deferential standard under AEDPA, which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d); *see also Ryan v. Miller,* 303 F.3d 231, 245 (2d Cir. 2002).

The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." *Ryan,* 303 F.3d at 245 (citing *Sellan v. Kuhlman*, 261 F.3d 303, 309-310 (2d Cir. 2001) (internal quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

C. *Petitioner's Claims*

1. *Knowing and Voluntary Plea*

Petitioner claims that his guilty plea was not knowing and voluntary because the trial court failed to explore whether he was waiving the potential defenses of extreme emotional disturbance and intoxication. This claim is procedurally barred from federal *habeas* review and, in any case, without merit.

   i. *Petitioner's Claim is Procedurally Defaulted*

On direct appeal, Petitioner claimed that his plea was not knowing and voluntary primarily because the court did not alert Petitioner that, by pleading guilty, he was waiving the potential defenses of extreme emotional disturbance and intoxication (Brief for Defendant-Appellant, Docket Entry 3 (App't Br.), Ex. B at 6). Under New York law, in order to preserve a

claim on direct appeal challenging the voluntariness of a guilty plea on a particular ground, the petitioner must have moved the trial court to withdraw the plea *on that ground*. *See People v. Sierra*, 256 A.D.2d 598, 599 (2d Dep't 1998) (holding that the contention that defendant's plea was not voluntary was "unpreserved for appellate review, as the defendant did not move to withdraw his plea or to vacate the judgment in the Supreme Court, Kings County, on this ground"); *see also People v. Smith*, 43 A.D.3d 474 (2d Dep't 2007). Petitioner did not attempt to withdraw his plea in the trial court on the ground that his plea was not knowing or voluntary; rather, at most, Petitioner arguably made a motion at sentencing to withdraw his plea based on the severity of his potential sentence.[4] The Appellate Division thus correctly concluded that Petitioner's claim was unpreserved for state appellate review. *See People v. Ross*, 52 A.D.3d 624 (2d Dep't 2008).

Furthermore, Petitioner's subsequent motion to vacate his conviction pursuant to N.Y.C.P.L.R. § 440.10 on the ground that his plea was not knowing and voluntary cannot resuscitate his claim for federal habeas review. *Clark v. Perez, 510 F.3d 382*, 390 (2d Cir. 2008); *Wells v. Miller*, 02-CV-5778 (JBW), 2003 WL 23185759, at *16 (E.D.N.Y. Oct. 23, 2003) (holding that Petitioner may not seek collateral review of claims pursuant to section 440.10 of the New York Criminal Procedure Law where those claims could have been raised on direct appeal).

As the state court's decision rested on a procedural default, this Court is prohibited from deciding Petitioner's claim on the merits, unless Petitioner can demonstrate (1) cause for his

---

[4] Indeed, although the trial court treated Petitioner's claim that his sentence was "too severe" (S. 3) as a motion to withdraw his guilty plea, this is entirely distinct from a motion to withdraw a plea because it was not knowing or voluntary.

9

default and prejudice therefrom, or (2) that a fundamental miscarriage of justice will occur if his claim is not reviewed. *Coleman*, 501 U.S. at 750. Petitioner has not alleged that some external factor prevented him from asserting this claim on direct appeal. *See Aparicio*, 269 F.3d at 90. Thus, Petitioner's claim that his plea was not knowing and voluntary is unreviewable by this court.[5] *Id.* To ensure that no miscarriage of justice will occur, however, the Court has reviewed Petitioner's claim on its merits, see *infra*, and finds it to be unavailing. *See Dunham*, 313 F.3d at 730.

    ii.    The Merits

Even assuming Petitioner's claim was not procedurally barred, Petitioner's contention that his plea was not knowing and voluntary fails. Where, as here, Petitioner's claim was adjudicated on the merits in state court, albeit as an alternative holding, AEDPA deference applies.[6] *See Mask v. McGinnis,* 233 F.3d 132, 137, 139 (2d Cir. 2000) (applying AEDPA deference where the State's procedural default argument was waived but the state court adjudication had addressed the merits of the case in the alternative); *Dozier v. Phillips*, 03-CV-3298 (RJS)(HBP), 2009 WL 3030299, at *4 (S.D.N.Y. Sept. 21, 2009).

---

[5] Although a petitioner can establish "cause" to excuse a procedural default by showing that counsel was ineffective in "failing properly to preserve the claim for review in state court" *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Carrier*, 477 U.S. at 488-89), Petitioner has not made such allegation. Even if he had, Petitioner could not rely on this exception as he did not receive ineffective assistance. *See infra*, at II.C.3

[6] After holding that Petitioner's claim was procedurally barred from review, the court also held that: "In any event, the record of the plea proceeding establishes that the plea was knowing and voluntary, and that there was no need for further inquiry concerning the existence of the possibility of the affirmative defenses of extreme emotional disturbance or intoxication." *People v. Ross*, 52 A.D.3d 624 (2008) (citations omitted).

As noted, under AEDPA's deferential standard, *habeas* relief may be granted only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Supreme Court has repeatedly held that,"[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal quotation marks and citations omitted); *see also Parke v. Raley*, 506 U.S. 20, 28–29 (1992) (plea is valid when it is both knowingly and voluntarily made); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). "A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. People of New York*, 07 CV 744 (SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir. 1988)).

There is nothing in the record to indicate that Petitioner's plea was less than voluntary, knowing, and intelligent, or that the state court's decision was contrary to established law.[7] At the plea proceeding, Petitioner, represented by counsel, fully allocuted to the crime of Murder in the First degree in a manner that made clear that he understood the nature of the charges against

---

[7] Where, as here, a defendant is represented by counsel at the plea proceeding, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56. As discussed further, *infra* II.C.3., to the extent petitioner alleges that his guilty plea was involuntarily induced due to the ineffective assistance of his counsel, his contention is unavailing.

him and the elements of the crime.[8] Petitioner admitted to all of the factual allegations underlying the crime (P. 11-12). He independently recited the time and location of the incident, and the method by which he killed both victims (P. 12).

Moreover, the plea minutes demonstrate that Petitioner was informed and aware of the consequences of his guilty plea (P. 16-17). Petitioner fully recognized the nature of the charges against him and the rights he was waiving by entering a guilty plea (P. 23). Petitioner assured the trial court that he was entering the plea of his own free will (P. 17-18). Petitioner also stated to the court that he was not under the influence of any drugs, medicine, alcohol or any substance that could affect or impair his ability during the plea proceeding (P. 14). Finally, Petitioner confirmed that his decision to plead guilty was of his own free will and not the result of any threats or coercion (P. 17-18).

The Court finds that the state court's determination that Petitioner's guilty plea was voluntary, knowing, and intelligent was not unreasonable. The trial court conducted a lengthy and thorough discussion with Petitioner during his allocution to ensure that Petitioner understood the content and consequences of the proceeding. Petitioner was lucid, even stopping to engage counsel where he did not fully understand questions posed by the court (P. 19-22). Therefore, the Appellate Court's determination that "the plea proceeding establishes that the plea was knowing and voluntary, and that there was no need for further inquiry concerning the existence of the possibility of the affirmative defenses of extreme emotional disturbance or intoxication" was not an unreasonable application of clearly established Supreme Court precedent, nor an

---

[8] An individual is guilty of Murder in the First Degree when "with intent to cause the death of another person, he causes the death of such person or of a third person; and . . . as a part of the criminal transaction, the defendant, with the intent to cause . . . the death of an additional person . . . causes the death of an additional person." New York P.L. § 125.27 [1][a][viii].

unreasonable determination of the facts in light of the evidence presented in the trial court proceeding. *People v. Ross*, 52 A.D.3d 624 (2008) (citations omitted); *see Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002).

### 2. *Due Process Failure of Trial Court to Order* Sua Sponte *a Competency Hearing*

Petitioner argues that the trial court violated his due process rights by failing to order a competency hearing *sua sponte*. Petitioner previously raised this claim on a motion to vacate the trial judgment under N.Y.C.P.L.R. § 440.10 (Resp't Br., Ex. F), and it was denied on the merits. The state court's decision is therefore entitled to AEDPA deference. *Crowder v. Ercole*, 09-CV-3401 (CBA), 2012 WL 5386042, at *6 (E.D.N.Y. Nov. 2, 2012), (reviewing the Appellate Division's determination, in light of the AEDPA standard, to determine whether it was contrary to or an unreasonable application of Supreme Court precedent).

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. *Drope v. Missouri*, 420 U.S. 162, (1975); *Pate v. Robinson*, 383 U.S. 375 (1966). A defendant is incompetent to proceed if he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171. Some degree of mental illness, however, does not necessarily amount to incompetence to stand trial. *United States v. Vamos*, 797 F.2d 1146, 1150–51 (2d Cir.1986).

Petitioner's claim that the court did not order a competency evaluation is contradicted by the record. On November 1, 2005, prior to the start of the suppression hearing, defense counsel stated on the record that Petitioner had undergone a competency examination and that he was found competent to stand trial (Docket Entry 3, November 1, 2005 trans., at 3, appended to

Resp't Br.). Though the trial's court's obligation as to a defendant's competence is ongoing, the court satisfied its obligation by conducting a through inquiry, as discussed *supra* at I.C., of the defendant's lucidity and competence before accepting his guilty plea. *See Drope,* 420 U.S. at 171, 181. Moreover, Petitioner's participation at the plea proceedings and his consultation with counsel demonstrate that he understood the nature and purpose of the plea proceeding and was both able to consult with his counsel and assist in preparing his defense (P. 19-22).

Petitioner has therefore failed to show that the state court ruling on his 440.10 motion to vacate was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

   3. *Ineffective Assistance of Counsel*

Finally, Petitioner argues that he was denied effective assistance of counsel at the trial court because counsel failed to: (a) challenge the determination that Petitioner was competent to stand trial; and (b) obtain an independent psychiatric examination of Petitioner concerning his mental condition at the time of the murder. This, he implies, would have provided him with the basis for a psychiatric defense at trial. Had a psychiatric defense been available to him, he claims that he would not have chosen to plead guilty. Petitioner previously raised this claim on his motion to vacate the judgment under N.Y.C.P.L.R. § 440.10, and it was denied on the merits (Resp't Br., Ex. F). The state court's decision is therefore entitled to AEDPA deference. *See Crowder,* 2012 WL 5386042, at *6.

      i. *Ineffective Assistance Standard*

To prevail on a claim for ineffective assistance of counsel, Petitioner must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland*

*v. Washington,* 466 U.S. 668, 680 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Strickland's first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments." *Id.* (quoting *Strickland,* 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord,* 77 F.3d 578, 588 n. 3 (2d Cir. 1996).

With respect to the second prong of the *Strickland* test in the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and instead would have exercised his or her right to a trial with some probability of success. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *United States v. Coffin,* 76 F.3d 494, 498 (2d Cir. 1996).

## ii. *Strickland* Application

Petitioner has failed to satisfy the first prong of *Strickland*. Defense counsel did in fact have his own doctor examine the petitioner and provided the court with notice that he intended to present psychiatric evidence of mental disease or defect (Docket Entry. 3, Nov. 1, 2005 trans., at 3; Jun. 7, Notice, appended to Resp't Br.). Petitioner chose not to proceed to trial and to instead accept a favorable plea agreement negotiated by counsel (P.9). Nothing in the record demonstrates that Petitioner's counsel's behavior, with respect to a presentation regarding Petitioner's competence, fell outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The state court's determination that Petitioner's ineffective assistance claim was meritless was therefore not an unreasonable application of *Strickland*.

Petitioner, in any event, has also failed to satisfy the second prong of *Strickland*. Petitioner's counsel had his own doctor conduct a psychiatric examination of Petitioner (P. 3). The physician found Petitioner fit to stand trial. *Id.* Petitioner chose not to, and instead accepted a plea of twenty years to life imprisonment, whereas if Petitioner had proceeded to trial, he would have faced a potential term of life imprisonment without parole. Therefore, it cannot be said that there is a reasonable probability that presenting a psychiatric defense at trial would have led to a more favorable result for Petitioner, especially in light of the findings of Petitioner's own psychiatric expert and the plea deal Petitioner received.

Accordingly, Petitioner is not entitled to *habeas* relief.

## II. Motion for Appointment of Counsel

Petitioner also moved this Court to appoint him counsel. A *habeas* petitioner does not have a constitutional right to counsel. *Green v. Abrams,* 984 F.2d 41, 47 (2d Cir. 1993).

Nevertheless, "[i]n habeas corpus cases, counsel must be appointed for qualified indigents when a hearing is required; the court may appoint counsel at an earlier stage if it deems appointment desirable." *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986); *accord Graham v. Portuondo,* 506 F.3d 105, 107 (2d Cir.2007). Petitioner has not set forth any basis for which a hearing would be required. Moreover, the disposition of this case would be the same even if the court were to accept all of Petitioner's factual assertions as true. Thus, the interests of justice do not require the appointment of counsel in this case, and Petitioner's motion to appoint counsel is, therefore, denied. *See Carmona v U.S. Bureau of Prisons,* 243 F.3d 629, 635 (2d Cir. 2001).

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has demonstrated no basis for *habeas* relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of *habeas corpus* is denied. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: May 15, 2013
       Brooklyn, New York